Fairchild, J.
(concurring in part; dissenting in part). I concur in the decision of this court to enjoin the county court of Kenosha county from interfering with the liberty of the sheriff and the county clerk. I do not agree with some of the conclusions expressed in the opinion.
I.
From my study of the record, this appears to have been the situation:
*579 ■ Judge Bode made an arrangement with an appliance firm to install an air conditioner on approval. He hoped the county would buy it, but took the position that if it did not, it would nevertheless be liable for the installation and rental. Any “order” that he gave the appliance firm was an “order” in the commercial sense only. There was no proceeding before the court, and no order was issued by the court. This occurred September 1st. I can see no greater significance or dignity in Judge Bode’s “order” at this point than if the same air conditioner had been ordered by ■ the sheriff for his office.
On September 2d, Judge Bode notified Mr. Lindgren of his position, and Mr.' Lindgren disputed the judge’s authority to obligate the county in this manner. I do not agree with the majority’s characterization of Mr. Lindgren’s letter as “blistering.” It was emphatic, to be sure, but at this point there was simply a collision between the view of one public servant that he was authorized to obtain certain equipment for his office, and a denial by the officer charged with the duty of purchasing supplies that the proposal was duly authorized or in the public interest.' (Mr. Lindgren was purchasing agent as well as county clerk.),. Judge Bode had sent the appliance firm a copy of his letter -to Mr. Lindgren; Mr. Lindgren sent the firm a copy, of his reply.
Up to this point there was no proceeding before the county court. Evidently it then occurred to Judge Bode that his arrangement with, or “order” to -the:appliance firm could be considered an order of the county court, and that Mr. Lindgren had interfered with, arid attempted to countermand this “order”'by sending the firm a copy of his reply. Thereupon Judge Bode issued an order to Mr. Lindgren that he show cause why he should not be held in contempt for such interference.- The order closed with the words, set out in capital letters in a separate line: “FAIL NOT AT YOUR PERIL.”
*580 Then a proceeding took place, before the court in which the court repeatedly insisted on a plea of guilty or not guilty, and Mr. Lindgren repeatedly answered that he wanted to make a statement to the court. The court then directed the sheriff to confine the clerk until he should plead. Later, the court had Mr. Lindgren brought back, and in response to repeated requests by the court to plead guilty or not guilty, he stood mute.
Although the papers are captioned “In the Matter of Air-Conditioning the County Court Chambers,” and although the judge made one statement apologizing to those present for the hot and humid conditions, and another explanation “to alleviate the discomfort of the people in this court today,” which he characterized as “background,” I cannot agree with the view of the majority that “the county court was starting a special proceeding to determine the necessity of air-conditioning the county court chambers.” It is true that the court could have instituted and heard such a proceeding, and it might well have resulted in a writ of mandamus or other order of the court which Mr. Lindgren would have been obliged to obey unless reversed on appeal. The authorities cited by the majority would sustain such procedure. It would be orderly, and consonant with the obligations which the different branches of government owe to each other. But what was attempted here was to have the court punish the county clerk for disagreeing with the judge, in a matter not yet before the court, and in which each had a duty to the public.
In any event, the county court has no authority to imprison one who is charged with criminal contempt in order to compel him to plead guilty or not guilty. I will pass over the fact that the contempt proceeding was not properly commenced. Whether properly commenced or not, it had no merit.
*581 In substance it was a proceeding for criminal contempt, although not brought in the proper form. Presumably the theory was that Mr. Lindgren had wilfully resisted an order of the court. Sec. 256.03 (4), Stats. In that proceeding, the defendant need not plead. Sec. 8, art. I of the constitution, provides that no person shall be compelled in any criminal case to be a witness against himself. This applies in criminal contempt cases. State ex rel. Rodd v. Verage (1922), 177 Wis. 295, 317, 187 N. W. 830. The present majority opinion states that sec. 955.08 applies to criminal contempts where summary proceedings are not proper. This means that when Mr. Lindgren refused to plead, the court should have entered a plea of not guilty in his behalf. The court had no more power to compel him to plead than it would have on a criminal prosecution. Even in a case of civil contempt, where the court is authorized to require answers to interrogatories, the court must frame questions of fact, and allow a reasonable time for answer. Sec. 295.12.
In my opinion, the conviction for refusal to plead was a nullity.
II.
I do not agree that the judge of the municipal court of Racine county was required by sec. 292.21 (3), Stats., to remand Mr. Lindgren to custody. An examination of the papers before Judge DuRocher, the petition for writ of habeas corpus, and the sheriff’s return, show the following propositions:
1. The petition alleged that the “order” for the air conditioner was not a process or order lawfully issued or made by the county court. The return did not deny this allegation, but alleged that Judge Bode “placed an order and purchased ... a portable air conditioner . . .”
*582 2. The petition alleged “that no rights or remedies of a party in an action or proceeding were pending or triable in such court.” Thus, the proceeding was not in civil contempt.
3. There was no commitment other than a transcript of an oral order, certified by the reporter. The only matter charged as a contempt therein was “refusing to plead to the charge.” I pass over the questions whether this paper was a “commitment” and whether the contempt was “specially and plainly charged;” both must be true before sec. 292.21 (3), Stats., requires a final order of remand on habeas corpus. But it seems clear to me that if the papers did not conclusively show that the court had no authority to compel the county clerk to enter a plea, they, at least, raised a substantial question' as to whether there was such authority. If a court does not have authority to commit for the contempt charged, sec. 292.21 (3), does not require that the prisoner be remanded.
The judge of the municipal court of Racine county was in an unenviable position. He had before him a record of action by a court of a neighboring county which appeared to embody the sort of arbitrary imprisonment from which the writ of habeas corpus was designed to protect us. An unauthorized invasion of the liberty of the county clerk would be most serious. Judge DuRocher was undoubtedly uncomfortably aware, as were the members of this court in the first days of September, of the extraordinary heat wave then prevailing, and could conclude that' the same condition in Kenosha might explain, though not justify, why an otherwise judicial temperament departed from the guideposts of judicial conduct. In my opinion, Judge DuRocher quite properly set the county clerk free upon bond until such time as the legal issues before him could be determined.
I am authorized to state that Mr. Justice Brown joins in this opinion.